### Mrs. Kay D. WILLIAMSON

v.

### PETROLEUM HELICOPTERS, INC., Societe Nationale Industrielle Aerospatiale Now Eurocopter S.A. and American Eurocopter Corporation.

### John Carver Richards, II and Carol Ann Richards

v.

### Petroleum Helicopters, Inc., Societe Nationale Industrielle Aerospatiale Now Eurocopter S.A. and American Eurocopter Corporation.

### Civil Action Nos. G–97–301, G–97–302.

United States District Court, S.D. Texas, Galveston Division.

Dec. 31, 1998.

case under the standards for the typical "failure to hire" type of racial discrimination.

Harvey Jay Lewis, Lewis & Kullman, New Orleans, LA, for Kay D. Williamson.

Dennis M. McElwee, Schechter and Marshall, Houston, TX, for John Carver Richards, II, Carol Ann Richards, John Paul Richards.

Ethan L. Shaw, Moore Landrey et al, Beaumont, TX, for Linda Sue Gardner.

Leslie Megin Koch, Louisiana Workers Compensation Corp, Legal Counsel, Baton Rouge, LA, for Louisiana Workers' Compensation Corporation.

Ronnie W. Baham, Jr., Brown Sims Wise & White, Houston, TX, for Insurance Company of the State of Pennsylvania.

Leo R. McAloon, New Orleans, LA, Kenneth H. Laborde, Kenneth LaBorde, Pulaski Gieger & LaBorde, New Orleans, LA, for Petroleum Helicopters Inc.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, William L. Robinson, Lillick & Charles, Long Beach, CA, for American Eurocopter Corporation.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, Kevin Charles Cabaniss, Locke Purnell et al, Dallas, TX, William L. Robinson, Lillick & Charles, Long Beach, CA, for Eurocopter S.A.

Harvey Jay Lewis, Lewis & Kullman, New Orleans, LA, for Kay D. Williamson.

Jad J. Stepp, Stepp von Sternberg and Sullivan, Houston, TX, for AMPEP, PLC.

### ORDER DENYING THIRD PARTY DEFENDANT AMPEP, plc's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

KENT, District Judge.

This wrongful death case arises under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* Plaintiffs were killed on November 28, 1996, when the helicopter in which they were riding crashed while attempting to land on an offshore platform in the Gulf of Mexico. Plaintiff Kay Williamson filed this claim against Defendants on behalf of herself and as the personal representative of deceased Plaintiff James Edward Williamson on May 23, 1997, the same day that Plaintiffs John and Carol Richards filed a claim against Defendants on behalf of themselves and as representatives of deceased Plaintiff John Paul Richards. On September 18, 1997, the two cases were consolidated. On June 1, 1998, Defendant Petroleum Helicopter filed a Third Party Complaint against AMPEP, plc, seeking to add AMPEP as a Third-Party Defendant in this litigation, and Third Party summons were issued for AMPEP on July 20. Now before the Court is Third-Party Defendant AMPEP, plc's Motion to Dismiss for Lack of Personal Jurisdiction of September 25, 1998. For the reasons set forth below, Third-Party Defendant AMPEP's Motion is **DENIED**.

### I. ANALYSIS

Defendant Petroleum Helicopters, Inc. ("PHI") alleges that the accident that claimed the lives of Plaintiffs was caused by a faulty bearing designed and manufactured by Third-Party Defendant AMPEP, plc. Accordingly, Defendant PHI filed a Third-Party Complaint joining AMPEP in the instant litigation. AMPEP now argues that it is not subject to the personal jurisdiction of this Court.

In federal court, personal jurisdiction over a non-resident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. TEX. CIV.PRAC. & REM.CODE ANN. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993).

Whether the exercise of personal jurisdiction over Third-Party Defendant AMPEP is consistent with the Due Process Clause of the United States Constitution involves a two-pronged inquiry. First, the Court must conclude that AMPEP has "minimum contacts" with Texas. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring AMPEP to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994); *Ruston,* 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by conducting

an analysis of either specific jurisdiction or general jurisdiction. *Wilson,* 20 F.3d at 647. If the conduct of a defendant that supports personal jurisdiction is related to a stated cause of action, personal jurisdiction is known as "specific jurisdiction." *Ruston Gas Turbines,* 9 F.3d at 418–19; *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1496 (5th Cir.1993). The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil …"). The single act of placing a product into the stream of commerce with the knowledge that it will be used in the forum state is sufficient to satisfy the specific jurisdiction minimum contacts standard. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Ruston Gas Turbines,* 9 F.3d at 419–20.[1] Alternatively, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, contacts unrelated to the cause of action may confer general jurisdiction. However, these contacts with the foreign state must be both "continuous and systematic" and "substantial." *Helicopteros Nacio-*

*nales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417; 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar,* 990 F.2d at 1496.

At the outset, the Court notes that although the burden is on Plaintiff—in this case, Third–Party Plaintiff—it need only make a prima facie showing of jurisdiction, and its allegations in that regard are to be taken as true unless controverted; moreover, any conflicts are to be resolved in its favor. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir.1990).

Third–Party Defendant AMPEP is a foreign corporation whose sole place of business is in the United Kingdom. It has no employees or representatives in Texas, nor does it dispatch representatives to solicit business in Texas or the United States. Sales in the United States comprised one percent or less of its total sales in 1997 and 1998. It has conducted sporadic dealings over the years with two Texas customers, to whom it has sold spare parts. However, those dealings resulted in less than $60,000 in sales and came only at the request of the Texas customers.

On the other hand, AMPEP sells its bearings to "virtually all makes of European helicopters" to be incorporated directly into those manufacturers' aircraft, according to AMPEP, plc's Internet site. AMPEP's presence on the Internet—it maintains a fairly polished advertising site—indicates both the desire and the capability to serve a broad market. It acknowledges that it has no idea of the identity or the location of the ultimate users of the aircraft that employ its bearings.

In this case, Defendant PHI's third-party claim against AMPEP stems from AMPEP's contacts with this forum. According to PHI, the cause of the fatal helicopter crash form-

---

1. In *Ruston Gas Turbines,* the Court explained that the United States Court of Appeals for the Fifth Circuit has continued to employ the *World–Wide Volkswagen* "stream-of-commerce" test despite subsequent Supreme Court pronouncements on that issue in *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 111, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987). In *Asahi,* a four-justice plurality authored by Justice O'Connor argued for a requirement of "additional conduct" by the defendant to support an assertion of personal jurisdiction under the stream of com-

merce approach. 480 U.S. at 110, 107 S.Ct. at 1031. Noting that the plurality gave no clear guidance on the proper use of the "stream-of-commerce" test, the Fifth Circuit has consistently continued to apply that test as articulated in *World–Wide Volkswagen. See Ruston Gas Turbines,* 9 F.3d at 419–20 (citing *Ham v. La Cienega Music Co.,* 4 F.3d 413, 416 and n. 11 (5th Cir. 1993); *Irving v. Owens-Corning Fiberglas Corp.,* 864 F.2d 383, 386 (5th Cir.1989); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 375 (5th Cir.1987)).

ing the basis of this suit was the failure of a bearing designed and manufactured by AMPEP and placed by it in the stream of commerce, through which it ultimately found its way to Galveston, Texas. Accordingly, the Court will perform a specific jurisdiction analysis.

■ The question of whether AMPEP has sufficient contacts to subject it to specific jurisdiction in this Court is a close one. However, the facts of this case bear a resemblance to those of a case in which the United States Court of Appeals for the Fifth Circuit held that the forum state had specific jurisdiction over a foreign defendant. In *Bean Dredging Corp. v. Dredge Technology Corp.*, the Fifth Circuit held that a Washington corporation that manufactured steel castings and injected them into the stream of commerce but had no other contacts with Louisiana had sufficient contacts with that state to be amenable to suit there. 744 F.2d 1081, 1085 (5th Cir.1984). The fact that the defendant in *Bean Dredging* was a component manufacturer that did not control the distribution system that ultimately placed its product in the forum state was not decisive, the Fifth Circuit held. "[E]ven though [the defendant] 'did not originate the distribution system and [does] not control it, [the company] did place the [steel castings] in and move them along a stream of commerce destined for retail sale [in finished products] throughout the United States.'" *Id.* (quoting *Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1126 (7th Cir.1983)). Similarly, in the instant case, AMPEP sold its bearings for use in "virtually all makes" of European helicopters. While AMPEP's approximately $600,000 in United States sales between 1993 and 1997 were only a fraction of its total sales, the possibility that helicopters using its bearings would end up in Texas was foreseeable. Mere foreseeability or awareness that a defendant's product may find its way into the forum state is a constitutionally sufficient basis for personal jurisdiction where the product reached the forum state while still within the stream of commerce. *See Ruston Gas Turbines*, 9 F.3d at 420; *Bean Dredging*, 744 F.2d at 1083–84.

AMPEP argues that it cannot be subject to the specific jurisdiction of this Court because Plaintiffs' cause of action does not have any connection to AMPEP's activities within Texas. Those activities, it contends, were limited to the spare parts it sold to two Texas customers and the bearings it sold in the United States, which were of a different type than those alleged to have contributed to the fatal accident. AMPEP's argument is inapposite. The activities with which the specific jurisdiction analysis is concerned are those that placed AMPEP's bearings in the stream of commerce. As the Fifth Circuit stated in *Bean Dredging*, the essential analysis concerns itself not with the product that actually caused the accident but rather with the total number of products fabricated by the defendant and incorporated as component parts of products sold throughout the stream of commerce. 744 F.2d at 1085. Here, AMPEP produced numerous bearings and sold them to European helicopter manufacturers, who then incorporated them into their aircraft, which in turn they sold in markets throughout the world. The possibility that such aircraft would end up in Texas was foreseeable. Consequently, AMPEP had clear notice that it would be amenable to suit in this state. *See World–Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567. Because AMPEP's activities in inserting its products into the stream of commerce are related to this cause of action, those activities satisfy the minimum contacts prong of the personal jurisdiction analysis.

■ The second question to be answered under the personal jurisdiction analysis is whether requiring Third–Party Defendant AMPEP to defend this suit in Texas would satisfy "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. In determining this fundamental fairness issue, the Court must examine five factors: the defendant's burden; the forum state's interests; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines*, 9 F.3d at 421.

In this case, the burden on AMPEP of litigating this claim in Texas is heavy. AMPEP is based in England and has no corporate presence in the United States. Moreover, it does relatively little direct business with U.S. customers. As the plurality in *Asahi Metal Industry Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) pointed out, courts should exercise "great care and reserve ... when extending our notions of personal jurisdiction into the international field." 480 U.S. at 115, 107 S.Ct. at 1034. However, the other factors support the exercise of this Court's personal jurisdiction over AMPEP. The deceased Plaintiffs were Texas residents who died en route to a job on an offshore oil platform. The offshore oil industry is obviously prominent in Texas. One common means of traveling from shore to these platforms is by helicopter, and AMPEP acknowledges that it supplies bearings to many Helicopter manufacturers. Thus, the safety of AMPEP's products is a subject of great interest to this state. Similarly, both the Third–Party Plaintiff and the judicial system as a whole have an interest in promoting convenient and effective resolutions of controversies such as this. PHI's ability to litigate its third-party claim against AMPEP in this Court would greatly serve its interest in obtaining convenient and effective relief. Moreover, the interests of the judicial system are better served when a court can dispose of all potential claims in one suit rather than allow an action to be litigated piecemeal in several suits in different forums. Finally, Texas shares a universal public interest in furthering workplace safety, particularly in high-risk industries such as offshore oil development. Consequently, the second-prong of the personal jurisdiction due process test is satisfied. The exercise of personal jurisdiction over AMPEP in Texas does not offend traditional notions of fair play and substantial justice.

Accordingly, after careful consideration of the totality of the circumstances, the Court concludes that personal jurisdiction exists over AMPEP, plc in this action and that the exercise of jurisdiction would be consistent with constitutional requirements. The Third–Party Defendant AMPEP's Motion to Dismiss for Lack of Personal Jurisdiction is therefore **DENIED.**

## II. CONCLUSION

For the reasons stated above, Third–Party Defendant AMPEP, plc's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**